# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| United States of America<br>v.<br>Anthony Cross (DOB: XX/XX/1979)<br><br>*Defendant(s)* | ) ) ) ) ) ) ) )  Case No. 20m 842 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  11/1/2019 - 1/13/2020  in the county of  Milwaukee  in the Eastern District of Wisconsin, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 841(b)(1)(B) | Distribution of and possession with intent to distribute controlled substances |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Christopher Farrell, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: January 13, 2020

_____
Judge's signature

City and state: Milwaukee, Wisconsin

William E. Callahan, Jr.
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Christopher Farrell, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I am a Special Agent with the FBI and have been since August of 2008. I have been assigned to the Southeastern Wisconsin Regional Gang Task Force since September of 2019. I was previously assigned to the Louisville and Pittsburgh Field Offices. Prior to being employed with the FBI, I was a police officer for approximately six and a half years. I am an investigator or law enforcement officer of the United States within the meaning of 18 U.S.C. Section 2510(7), in that I am empowered by the law to conduct investigations of and to make arrests for federal felony arrests.

2. As a Special Agent, I have participated in the investigation of narcotics-related offenses, resulting in the prosecution and conviction of individuals and the seizure of illegal drugs, weapons, United States currency, and other evidence of criminal activity. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of

1

controlled substances. I have participated in all aspects of drug investigations, including physical surveillance, execution of search warrants, undercover operations, court-ordered wiretaps, analysis of phone and financial records, and the arrests of numerous drug traffickers. I have also been the affiant of many search warrants. Additionally, I have spoken with other experienced narcotics investigators on numerous occasions concerning the method and practices of drug traffickers and money launderers. Furthermore, I have attended training courses that specialized in the investigation of narcotics trafficking and money laundering. Through these investigations, my training and experience, and conversations with other law enforcement personnel, I have become with the methods used by drug traffickers to manufacture, smuggle, safeguard, and distribute narcotics, and to collect and launder trafficking-derived proceeds. I am further aware of the methods employed by major narcotics organizations to thwart any investigation of their illegal activities. I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such.

3. The facts in this affidavit come my personal observations, my training and experience, my review of documents, and information obtained from other law enforcement agents and witnesses. This affidavit is intended to show merely that

2

there is probable cause for securing a complaint and does not set forth all of my knowledge about this matter.

4. I am submitting this affidavit in support of a criminal complaint for **ANTHONY CROSS**. For the reasons set forth below, there is probable cause to believe that on or about November 1, 2019, November 6, 2019, November 12, 2019, December 11, 2019, and January 13, 2020, **ANTHONY CROSS**, committed the crimes of distribution of and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 841(b)(1)(B).

## PROBABLE CAUSE

5. The United States, including the FBI and the FBI's Southeastern Wisconsin Regional Gang Task Force, are conducting a criminal investigation of **ANTHONY CROSS** (DOB: XX/XX/1979) regarding possible violations of Title 21, United States Code, Section 841(a)(1) (distribution of and possession with intent to distribute controlled substances).

6. In October of 2019, case agents interviewed a confidential source (CS #1). CS #1 stated that s/he bought cocaine approximately fifty times over the last two years from an individual CS #1 knows as "ANT." CS #1 indicated "ANT" sells cocaine from his house, which is located on 37th Street between Fond du Lac Avenue and Burleigh Street. According to CS #1, "ANT" is a Gangster Disciple gang member, sometimes carries a gun, and is obtaining his cocaine from Chicago,

3

Illinois. The CS provided a phone number of (414) 439-6701, or Target Cell Phone, for "ANT." CS #1 advised s/he could make a controlled buy of cocaine from "ANT."

7. Based upon my training and experience, I know that a "controlled buy" (and/or controlled contact) is a law enforcement operation in which a confidential source purchases drugs from a target. The operation is conducted using surveillance, usually audio and video taping equipment, and pre-recorded purchase money. When a confidential source is used, s/he is searched for contraband, weapons, and money before the operation. The confidential source is also wired with a concealed body recorder and monitoring device. When the transaction is completed, the confidential source meets cases agents at a pre-determined meet location and gives the purchased drugs and the recording/monitoring equipment to the case agents. The confidential source is again searched for contraband, weapons, and money. A sample of the suspected drugs is then field tested by case agents for the presence of controlled substance and then placed in inventory pursuant to normal inventory procedures. Telephone calls to the target by the confidential source are consensually recorded calls under the direction and control of case agents and made in the presence of case agents.

8. Between November 1 and December 11, 2019, CS #1 made four controlled purchases of crack cocaine (totaling 69.23 grams) and powder cocaine (totaling 3.47 grams), from **CROSS** at **CROSS's** residence, 31XX/31XXA N. 37th Street, Milwaukee, Wisconsin.

4

9. Case agents believe CS #1 is reliable and credible. First, CS #1 has provided information since October 2019. Second, CS #1's information is consistent with case agents knowledge of violent gang subjects in Milwaukee, Wisconsin and with evidence obtained elsewhere in this and other investigations where CS #1 was not utilized. Furthermore, substantial portions of CS #1's information has been corroborated by controlled drug purchases, money deliveries, consensually recorded phone calls with CROSS, as well as through independent investigation, including surveillance and information from other sources. CS #1 is cooperating with law enforcement to obtain consideration from the Milwaukee County District Attorney's Office for pending charges related to narcotics trafficking. CS #1 has prior battery, obstruction, and possession of narcotics convictions. For these reasons, case agents believe CS #1 to be reliable.

10. On November 1, 2019, case agents utilized CS #1 to conduct a controlled purchase of cocaine from "ANT." CS #1 made a consensually recorded phone call to the Target Cell Phone and told "ANT" that s/he needed to see him. "ANT" indicated "alright." Next, case agents provided CS #1 a recording device and pre-recorded money for the controlled purchase, and then established surveillance in the area of **CROSS's** residence, 31XX/31XXA N. 37th Street, Milwaukee. Surveillance observed an Infiniti parked at the location and a male in a gray hood approach the vehicle, which then quickly left. Case agents believe the male had sold narcotics to the individual in the Infiniti. Shortly thereafter, case agents

5

observed CS #1 park in the alley behind the residence. Upon CS #1's arrival at the residence, the same individual wearing a gray hood approached the passenger side of CS #1's vehicle, reached into the vehicle, and moments later walk back to the rear yard. After the transaction, case agents met with CS #1 and seized the crack cocaine and the recording device. Case agents field tested the crack cocaine with positive results for cocaine base and weighed approximately 6.84 grams.

11. After the controlled purchase, CS #1 was briefed. CS #1 indicated s/he called "ANT" at the Target Cell Phone and told him s/he needed seven grams. CS #1 indicated "ANT" walked up to the vehicle and gave CS #1 a knotted bag of crack cocaine. CS #1 gave $300 in pre-recorded law enforcement funds to "ANT." CS #1 observed "ANT" walk back into the rear yard and enter the rear door at the residence.

12. Case agents reviewed the recording device utilized by CS #1 to confirm his/her purchase of crack cocaine from "ANT."

13. On November 5, 2019, a case agent showed a single Milwaukee Police Department booking photograph of **ANTHONY CROSS** (DOB: XX/XX/1979) to CS #1. The photograph was unlabeled and contained no identifying information. CS #1 positively identified the photograph as the person CS #1 knew as "ANT" and the person that sold CS #1 the crack cocaine on November 1, 2019.

6

Case 2:20-mj-00842-WEC   Filed 01/13/20   Page 7 of 13   Document 1

14. On November 5, 2019, a case agent viewed the surveillance video of the controlled narcotics purchase on November 1, 2019 and positively identified "ANT" as **ANTHONY CROSS**.

15. On November 6, 2019, case agents utilized CS #1 to conduct a controlled purchase of cocaine from **CROSS**. CS #1 made a consensually recorded phone call to the Target Cell Phone and told **CROSS** that s/he needed to see him. **CROSS** indicated "alright." After providing CS #1 with pre-recorded monies and a recording device, case agents established surveillance in the area of **CROSS's** residence, 31XX/31XXA N. 37th Street, Milwaukee, and observed CS #1 park in the alley behind the residence. Surveillance observed **CROSS** walk to the front yard of the address and approach a vehicle. **CROSS** entered the vehicle and exited moments later. Shortly thereafter, surveillance observed **CROSS** walk to the back yard and approach CS #1's vehicle on the passenger side. Moments later, **CROSS** walked back to the back yard and was then observed in the front yard entering the previously observed vehicle. After the transaction, case agents met with CS #1 and seized the cocaine and the recording devices. Case agents field tested the cocaine with positive results for cocaine base and weighed approximately 13.94 grams.

16. After the controlled purchase, CS #1 was briefed. CS #1 indicated s/he called **CROSS** at the Target Cell Phone and told him s/he needed "half of soft." According to CS #1, **CROSS** walked up to the passenger side of the vehicle and gave

7

CS #1 a paper ball filled with cocaine. CS #1 gave **CROSS** $600 in pre-recorded law enforcement funds.

17. Case agents reviewed the recording device utilized by CS #1 to confirm his/her purchase of cocaine from **CROSS**. A case agent viewed the surveillance video of the controlled narcotics purchase and positively identified the individual giving the narcotics to CS #1 as **CROSS**.

18. On November 6, 2019, I met with CS #1 who indicated s/he had purchased approximately one kilogram of powder cocaine from **CROSS** since 2012 or 2013. CS #1 stated **CROSS** is a Gangster Disciple and overheard him state he had relatives who are 4 Corner Hustlers in Chicago. CS #1 believed **CROSS** is obtaining his narcotics from these individuals in Chicago.

19. On November 12, 2019, case agents utilized CS #1 to conduct a controlled purchase of cocaine from **CROSS**. CS #1 made a consensually recorded phone call to the Target Cell Phone, and **CROSS** told CS #1 he would call CS #1 back. **CROSS**, using the Target Cell Phone, called back and indicated he was "over there," and CS #1 stated s/he would be there in a minute. CS #1 then drove to the 31XX/31XXA N. 37th Street, Milwaukee equipped with a recording device and pre-recorded law enforcement monies.

20. Case agents established surveillance in the area of **CROSS's** residence and observed CS #1 park in the alley behind the residence. Surveillance observed **CROSS** walk to CS #1's driver side door and return to the rear of the residence.

8

Shortly thereafter, **CROSS** returned to the driver's side door and then quickly ran back to the rear yard of the residence. After the transaction, case agents met with CS #1 and seized the cocaine and the recording device. Case agents field tested the cocaine with positive results for cocaine base and powder cocaine. The crack cocaine weighed 41.53 grams and the powder cocaine weighed 3.47 grams.

21. After the controlled purchase, CS #1 was briefed. CS #1 indicated s/he called the Target Cell Phone and told **CROSS** s/he needed an ounce and one-half of crack cocaine and a ball of powder cocaine. **CROSS** met CS #1 at the driver door and gave CS #1 one-half ounce of crack cocaine. CS #1 told **CROSS** he wanted an ounce and one-half of crack cocaine and a ball of powder cocaine. **CROSS** told CS #1 he thought s/he only wanted a half. CS #1 gave **CROSS** $1,950 in cash. **CROSS** returned and gave CS #1 a bag with an ounce of crack cocaine and another bag with a ball of powder cocaine.

22. Case agents reviewed the recording device utilized by CS #1 to confirm his/her purchase of cocaine from **CROSS**. A case agent viewed the surveillance video of the controlled narcotics purchase and positively identified the individual giving the narcotics to CS #1 as **CROSS**.

23. On December 4, 2019, a U.S. Magistrate Judge in the Eastern District of Wisconsin signed a search and seizure warrant to obtain prospective E-911/GPS Data latitude-longitude information for the Target Cell Phone. The U.S. Magistrate Judge also signed a pen register trap and trace order for the Target Cell Phone.

9

24. On December 11, 2019, case agents utilized CS #1 to conduct a controlled purchase of cocaine from **CROSS**. CS #1 made a consensually recorded phone call to the Target Cell Phone and **CROSS** told CS #1 to "come through there." CS #1 then drove to 31XX/31XXA N. 37th Street, Milwaukee equipped with a recording device and pre-recorded law enforcement monies.

25. Case agents established surveillance in the area of the residence and observed CS #1 park in the alley behind the residence. Surveillance observed **CROSS** walk to CS #1's passenger door and then return to the rear of the residence. CS #1 exited the vehicle and walked to the front passenger door, reached into the vehicle, and then returned to the driver seat. After the transaction, case agents met with CS #1 and seized crack cocaine and the recording device. Case agents field tested the crack cocaine with positive results for cocaine. The crack cocaine weighed 6.92 grams.

26. After the controlled purchase, CS #1 was briefed. CS #1 indicated s/he called the Target Cell Phone once s/he arrived in the alley behind the residence and told **CROSS** s/he needed "7 hard." **CROSS** met CS #1 at the passenger door and CS #1 gave **CROSS** $300. **CROSS** then dropped a corner cut bag of crack cocaine on the front passenger seat. The bag fell between the front seat and the passenger door. **CROSS** then walked back into the rear of the residence. CS #1 exited the vehicle and walked over to the front passenger seat to pick up the crack cocaine.

10

27. Case agents reviewed the recording device utilized by CS #1 to confirm his/her purchase of cocaine from **CROSS**. A case agent viewed the surveillance video of the controlled narcotics purchase and positively identified the individual giving the narcotics to CS #1 as **CROSS**.

28. Case agents reviewed the location data for the Target Cell Phone during the purchase of crack cocaine from **CROSS** on December 11, 2019. The crack cocaine purchase occurred between approximately 12:15 p.m. and 12:21 p.m. The location data showed the Target Cell Phone within 9 meters of **CROSS's** residence at approximately 11:58 a.m., within a 121 meter radius of the residence at approximately 12:13 p.m., and within an 8 meter radius of the residence at approximately 12:28 p.m. Case agents reviewed pen register trap and trace data for the Target Cell Phone, which showed CS #1 making a phone call to **CROSS** at approximately 12:07 p.m. and another call at approximately 12:15 p.m.

29. On January 8, 2020, case agents obtained a federal search warrant to search **CROSS's** residence, 31XX/31XXA N. 37th Street, Milwaukee, Wisconsin. That search warrant was executed on January 13, 2019, at which time law enforcement located **CROSS** and two other adults in the lower unit. Law enforcement also located approximately one or two ounces of suspected crack cocaine in the toilet, a digital scale in the kitchen garbage, sandwich baggies, two boxes of baking soda, and a small plastic baggie containing suspected marijuana. **CROSS** was arrested at the scene.

11

## CONCLUSION

41. Based upon the aforementioned information, I believe there is probable cause to believe that, on or about November 1, 2019, November 6, 2019, November 12, 2019, and December 11, 2019, and January 13, 2020, **ANTHONY CROSS**, committed the crimes of distribution of and possession with intent to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), 841(b)(1)(C), and 841(b)(1)(B).